**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Duane H. Bauer, *et al.*,<br><br>Defendants. | No. CV-17-08049-PCT-JJT<br><br>**ORDER** |

At issue is Plaintiff the United States's Motion to Enforce a Settlement Agreement (Doc. 43, Mot.) to which *pro se* Defendants Duane Bauer and Catherine Bauer each filed a Response (Doc. 48, 49, Resp.), and the United States filed Replies (Docs. 50, 51, Reply). Also at issue is Defendants' Motion for Telephonic Conference regarding the settlement. (Doc. 45.)

**I.    BACKGROUND**

On March 10, 2017, the United States filed a Complaint and alleged the following. (Doc. 1, Compl.) Duane Bauer did not file tax returns for the years 2001 through 2004. (Compl. ¶ 14.) The Internal Revenue Service (IRS) sent notices for those years, and Mr. Bauer did not challenge the deficiencies. (Compl. ¶ 15.) As of the date of the complaint, Mr. Bauer owed $883,071.92 in outstanding taxes, penalties, and interest. (Compl. ¶ 15.) Federal tax liens attached to Mr. Bauer's property pursuant to 26 U.S.C. §§ 6321 and 6322. (Compl. ¶ 19.) The primary property subject to liens is a home at 2640 S. Star Trail

Ridge in Cornville, Arizona. (Compl. ¶ 9.) While Mr. Bauer owns the home,[1] his wife Catherine Bauer was also named as a Defendant because she could claim an interest in the property, having invested in renovations upon her marriage to Mr. Bauer. (Compl. ¶ 6; Doc. 16, CB Ans.)

The United States's attorney, Alexander Stevko, and Defendants began discussing a possible settlement in December 2017. (Doc. 43-1, Stevko Aff.) Mr. Stevko and Defendants spoke by phone on March 7, 2018, coming to the preliminary terms of a settlement agreement. (Stevko Aff. ¶ 4.) After that conversation, on March 23, 2018, Mr. Stevko sent Defendants a letter containing the terms they had discussed. (Doc. 43-2, Ex. A, Letter.)

The March 23 letter proposed a deal under which Defendants would take out a home equity loan on the Star Trail Ridge property and use the loan to pay the United States at least $250,000 of Mr. Bauer's unpaid taxes within six months. (Letter at 2.) Upon receipt of the $250,000, the United States would "subordinate – but not release – its liens against the Subject Property in favor of the lien arising from the loan." (Letter at 2.) The United States also promised to "withdraw, without prejudice, the order of foreclosure and its foreclosure claim at this time," with the condition that if it did not receive $250,000 within six months, foreclosure proceedings would resume. (Letter at 2.) The deal was not intended as a complete settlement, but after payment of the initial $250,000, "the parties [would be] free to negotiate future payment plans and potential collection." (Letter at 2.) In exchange for the delay of foreclosure proceedings, Defendants would have to agree to entry of judgment against Mr. Bauer in the amount of $845,000. (Letter

---

[1] Initially there was a dispute as to ownership of the property because the land was acquired in 2004 by Chiropractic Health, LLC. (Compl. ¶ 11.) Mr. Bauer formed the LLC in 2001. (Compl. ¶ 10.) Mr. Bauer admitted that the LLC was inactive and that he was its sole member. (DB Ans. ¶¶ 28–29.) Mr. Bauer also attempted to appear on the entity's behalf, but an entity may not be represented by a *pro se* litigant. *In re Am. West Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994). Eventually, the United States moved for default judgment against the LLC and the Court granted it, finding that the LLC held title as the nominee of Mr. Bauer. (Doc. 34.) The United States is permitted to impose Mr. Bauer's lien on property owned by his nominee. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977).

at 3.) Additionally, Mrs. Bauer would have to declare her interests in the property to be subordinate to the federal tax liens. (Letter at 2.)

By its own terms, the "letter [was] not an offer or an acceptance of an offer, but a restatement of the terms as [the United States] understand[s] them." (Letter at 1.) The language indicated that, by signing, Defendants were making an "offer to the United States," which would then "consider and act on the settlement offer once it has received [their] signature making the offer." (Letter at 1.)

After receiving the letter, Defendants called Mr. Stevko to discuss it. Mr. Stevko alleges that he "said they could make the offer by signing and returning it to me," and that "they did not have to sign it, but if we did not reach a settlement, the government would pursue summary judgment." (Stevko Aff. ¶ 6.) But Mr. Bauer alleges that he did not understand the process or that his signature would constitute a binding offer. (Doc. 48, DB Resp. at 2.) Defendants also claim that Mr. Stevko presented them with two options: accept the agreement or have their home foreclosed upon immediately. (DB Resp. at 3.) They also allege that Mr. Stevko convinced them they could obtain a home loan for $300,000, when in reality, they were only able to secure at most $126,000. (CB Resp. at 5, 7.) Nevertheless, Defendants signed the letter on March 23, 2018. (Doc. 43-3, Exh. B.) They returned the signed copy to Mr. Stevko via email, with the subject line "agreement." (Stevko Aff. ¶ 7.)

On March 30, 2018, an agent of the United States accepted the offer and Mr. Stevko sent notice of the acceptance to Defendants via mail and email. (Doc. 43-4, Ex. C.) In April 2018, Mr. Stevko twice sent Defendants a draft stipulated judgment and order of sale, but they never responded. (Stevko Aff. ¶ 9.) After receiving an email from Mr. Bauer stating that he no longer planned to honor the offer, the United States filed a Motion to Enforce the Settlement on June 1, 2018. (Stevko Aff. ¶ 10.) On June 4, Mr. Bauer filed a Motion for Telephonic Conference regarding the settlement (Doc. 45), which the United States opposes (Doc. 47).

## II. LEGAL STANDARD

The Court has the discretion to decide motions without oral argument. LRCiv 7.2(f). In evaluating a motion to enforce a settlement agreement, the Court must decide whether the agreement is an enforceable contract between the parties. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law.") Where the United States is a party to a contract, the Court interprets it under federal law. *United States v. Allegheny County*, 322 U.S. 174, 183 (1944) ("The validity and construction of contracts through which the United States is exercising its constitutional functions . . . all present questions of federal law not controlled by the law of any state."). In order to show a contract exists, "[o]ne must show (1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity in offer and acceptance." *D & N Bank v. United States*, 331 F.3d 1374, 1378 (Fed. Cir. 2003).

## III. ANALYSIS

The Court finds no need for a telephonic conference in this matter, as both parties have adequately provided their arguments in the form of a Motion, Response, and Reply. *See* LRCiv 7.2(f).

Defendants seem to argue that there was no mutual intent to form a contract, but that claim is contradicted by their recounting of the events leading up to the agreement. Mr. Bauer points to language in the letter stating "'this is not an offer, or an[] acceptance of an offer,'" claiming "that is just how [he] understood it." (DB Resp. at 6.) But in the very next sentence, the letter goes on to say, "[y]ou may make this offer to the United States by signing below and returning this letter to the United States. The United States will consider and act on the settlement offer once it has received your signature making the offer." (Letter at 1.) Additionally, before Defendants signed the letter, Mr. Stevko "called first [Mr. Bauer] and made sure [Mrs. Bauer] was present and he discussed what will be in the Settlement letter." (CB Resp. at 4.) And when Defendants emailed the signed letter to Mr. Stevko, the subject line read "agreement." (Stevko Aff. ¶ 7.) All of

these facts indicate that Defendants intended to enter into an agreement, even if they were not pleased with the terms.

To the extent that Defendants claim the settlement was tainted by coercion because they were "only given [] two options[:] Sign his agreement which gives us 6 months to live in our home . . . or . . . the government will pursue summary judgment," their argument is unpersuasive. (DB Resp. at 5.) While Mr. Bauer says "serious discussion" about the deal "was not allowed to take place under threat," there are no facts from which the Court can plausibly infer that Mr. Stevko actually coerced Defendants. (DB Resp. at 5.) He did explain to Defendants that if they did not enter into an agreement to begin paying the nearly $900,000 that Mr. Bauer owed, the government would likely pursue summary judgment and foreclose on their home. (Mot. at 8.) But that alone is not a threat sufficient to constitute duress. *See* Restatement (Second) of Contracts § 176 cmt. d (Am. Law Inst. 1981) (explaining that a threat of civil process is only improper if made in bad faith, which "may be shown by proving that the person making the threat did not believe there was a reasonable basis for the threatened process," and that even an improper threat to commence civil process "may not amount to duress since defense of the threatened action is often a reasonable alternative.").[2]

Similarly unavailing is Mrs. Bauer's claim that she "was not willing to relinquish [her] claim until Attorney Stevko advised that we can get a reverse mortgage so we can pay the $250,000 and stay in our home." (CB Resp. at 8.) There is no indication that Mr. Stevko's assurance that Defendants could obtain a sufficient loan was a fraudulent misrepresentation or one that Defendants were justified in relying on. *See* Restatement (Second) of Contracts § 159 cmt. d (Am. Law Inst. 1981) (explaining that a recipient of an opinion usually "is not justified in relying on the other party's assertion of opinion because the recipient has as good a basis for forming his own opinion"). Rather than

---

[2] In applying federal contract law, courts "are, of course, guided by the general principles that have evolved concerning the interpretation of contractual provisions." *United States v. Seckinger*, 397 U.S. 203, 210 (1970). The Court looks to the Restatement of Contracts to articulate those general principles.

taking Mr. Stevko's advice as a guarantee that they would be able to secure adequate financing on the home, Defendants could have used their own knowledge about the market value of their home and looked into that question for themselves. They did not inquire about loans with banks until after making the offer to the United States and did not seek to withdraw from the agreement once they discovered they could not secure more than $126,000 from such a loan. (CB Resp. at 6–7.) Defendants' failure to investigate their options before making an offer to the United States does not mean they came to their decision under duress or by coercion of the United States.

In addition to the mutual intent of both parties to contract, there was also consideration. It is clear that Defendants received something of value—a six-month grace period to stay in their home. Lastly, as discussed above, the terms of the letter were clear and the resulting offer and acceptance were unambiguous.

**IV. CONCLUSION**

In signing a letter which proclaimed itself to be an offer and which they had previously discussed with the United States, Defendants made an offer. When the United States accepted their offer, Defendants became bound by the terms of their agreement.

IT IS THEREFORE ORDERED granting the United States's Motion to Enforce Settlement (Doc. 43).

IT IS FURTHER ORDERED denying Defendants' Motion for Telephonic Conference (Doc. 45).

IT IS FURTHER ORDERED that the Court will enter judgment in accordance with the settlement agreement as well as an order of foreclosure and decree of sale by separate orders.

Dated this 10th day of October, 2018.

Honorable John J. Tuchi
United States District Judge